IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWARD FEENEY<br>1708 Covington Rd.<br>Yardley, PA 19067 | : <br> : <br> : <br> : | CIVIL ACTION <br><br> No. |
| Plaintiff,<br>v. | : <br> : <br> : <br> : | |
| PERSANTE HEALTH CARE, INC.<br>d/b/a PERSANTE<br>200 East Park Dr., Suite 600<br>Mount Laurel, NJ 08054 | : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendant. | : <br> : | |

## CIVIL ACTION COMPLAINT

Edward Feeney, (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against Defendant for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq.*), the Age Discrimination in Employment Act ("ADEA" - 29 U.S.C. §§ 621 *et. seq.*), and the New Jersey Law Against Discrimination ("NJ LAD" - N.J.S.A. 10:5-1, *et. seq.*). Plaintiff asserts, *inter alia*, that he was unlawfully discriminated against and terminated from his employment in violation of state and federal law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress of such federal statutes.

1

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this State and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the District of New Jersey for this action.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant is a company located at the above-captioned address that provides cleaning services.

8. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff is a 67-year-old male.

11. Plaintiff has and continues to suffer from Polycystic Kidney Disease ("PKD") which at times, can cause high blood pressure, headaches, blood in urine, kidney stones, and urinary tract infections and can be very dangerous and life threatening.

12. Plaintiff was hired by Defendant in or about 2005.

13. During the majority of Plaintiff's employment with Defendant, he worked as a sleep technologist – where he would go to various hospitals and labs to conduct sleep studies.

14. In or about March of 2019, Plaintiff was approached by one of his managers and asked to start working within Defendant's Home Sleep Test ("HST") division.

15. In this division, Defendant would send out sleep study kits to patients so they could do sleep studies at their home.

16. From in or about March of 2019 through in or about March of 2020, Plaintiff was the only employee performing any work in the HST division.

17. Plaintiff's work while employed within the HST division of Defendant consisted of scheduling patients for home sleep studies, sending sleep equipment out to patients' homes, teaching them how to use the kit, and answering any questions they had (among other duties).

18. Plaintiff's title during the period he was employed with Defendant's HST division was Clinical HST Manager/Sleep Technologist.

19. In or about March of 2020, Plaintiff requested to work from home because the COVID-19 pandemic was beginning to surface and it appeared that COVID-19 was causing extremely severe complications for those who were advanced in age – like Plaintiff.

20. Plaintiff's request to work from home starting in March of 2020 was granted and shortly thereafter many other employees of Defendant began to work remotely (also because of the COVID-19 pandemic).

21. When COVID-19 became more prominent, the HST division within Defendant grew substantially because patients could not schedule in-person studies at hospitals or labs.

22. As a result of the increasing demand for home sleep studies, Defendant assigned two people, Rick Kieluhn ("Rick") and Brendan Feeney ("Brendan") to help Plaintiff in the HST division.

23. Rick and Brendan were previously performing work in the office pertaining to in-lab studies, but since they had virtually no patients after COVID-19 surfaced, Defendant assigned them to help Plaintiff.

24. In or about April of 2020, Plaintiff was informed by Defendant that he was being furloughed.

25. The decision to furlough Plaintiff seemed odd because Defendant's HST division was busier than it had ever been before. Furthermore, rather than furlough the two (younger) individuals who were sent to assist Plaintiff in the HST division, Defendant chose to furlough Plaintiff.

26. In or about June of 2020, Plaintiff was re-called from furlough and continued to work remotely upon his return.

27. Because Rick and Brendan had resumed their pre-COVID jobs, Defendant hired 3 more individuals to assist Plaintiff within the HST division.

28. Plaintiff learned that Defendant hired and began training the aforesaid individuals (discussed in Paragraph 27 of the instant Civil Action Complaint) shortly before he was recalled from furlough.

29. All three (3) individuals hired to assist Plaintiff in the HST division (discussed *supra*) had been sleep technologists with Defendant working in labs or hospitals prior to COVID

4

and are substantially younger than Plaintiff.

30. In or about the end of June of 2020, Plaintiff was asked to physically return to the office. In response to this request, Plaintiff advised Defendant's management, including but not limited to Sean Higgins (hereinafter "Higgins") in Defendant's Human Resources ("HR") office that he suffered from a medical condition and due to his medical condition, he was high-risk for developing severe and life-threatening complications if he were to contract COVID-19.

31. Based on the foregoing, Plaintiff requested to continue working remotely and informed Higgins that he could provide a doctor's note regarding his need for a reasonable medical accommodation.

32. Following his aforesaid conversation with Higgins, Plaintiff provided a doctor's note to Higgins requesting to work remotely as a result of his condition.

33. Plaintiff's request for a reasonable accommodation to continue working remotely (discussed *supra*) was granted and Plaintiff continued to work from home performing his job without issue until in or about January of 2021.

34. Plaintiff was not the only individual in the HST division who continued to work remotely beyond June of 2021. Upon information and belief, all three individuals who were hired to assist Plaintiff in the HST division also worked from home (after going through some initial training in the office).

35. In or about mid-January of 2021, Plaintiff was contacted by his manager, Ashley Shepherd ("Shepherd" – Senior Director of Customer Service), and informed that Defendant was restructuring and moving some employees' jobs around.

36. In response to this news, Plaintiff informed Shepherd that he had a disability and that he needed to continue to work from home because of his aforesaid disability. Shepherd

replied that said she would get back to him, but she never actually followed up with him.

37. Then, on January 25, 2021, Plaintiff was informed by Defendant's HR Department that his position was being eliminated.

38. Upon information and belief, out of the four of individuals who were performing the same job within Defendant's HST division, Plaintiff was the oldest and the only one eliminated.

39. Upon further information and belief, two out of the three remaining employees who were hired to assist Plaintiff in the HST division are still performing their jobs from home.

40. Based on a review of available jobs within Defendant following Plaintiff's separation, there were several available positions that the two remaining individuals (discussed above) could have been placed into, which would have allowed Plaintiff to stay employed, performing the work he was doing from home.

41. Furthermore, upon information and belief, there were other available positions within Defendant that Plaintiff could have performed from home, but he was not offered the same.

42. Plaintiff later learned through the EEOC process that Defendant is now claiming that it selected Plaintiff for job elimination because of alleged poor performance, which is completely absurd, as Plaintiff was never issued any written discipline regarding his performance in advance of being involuntarily separated from Defendant. Furthermore, Plaintiff was never informed that his performance was the reason he was selected for job elimination over the other aforesaid individuals performing the same job as him.

43. Based on the foregoing, Plaintiff believes and therefore avers that his termination was completely pretextual and that he was really terminated from his employment with

Defendant because of (1) his actual/perceived/record of disability; (2) his advanced age; (3) in retaliation for requesting a reasonable accommodation (i.e. to work remotely); and/or (4) to avoid having to accommodate Plaintiff any longer.

## Count I
### Violations of Americans with Disabilities Act, as amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate)

44. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

45. Plaintiff properly exhausted his administrative remedies by filing with the Equal Employment Opportunity Commission and initiating this lawsuit within 90 days of receipt of a right-to-sue letter and/or notice of dismissal.

46. Based on the foregoing, Plaintiff believes and therefore avers that he was terminated by Defendant (1) because of his actual/perceived/record of disability; (2) in retaliation for requesting a reasonable accommodation (i.e. to work remotely); and/or (3) to avoid having to accommodate Plaintiff any longer under the ADA.

47. These actions as aforesaid constitute violations of ADA.

## Count II
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate)

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Based on the foregoing, Plaintiff believes and therefore avers that he was terminated by Defendant (1) because of his actual/perceived/record of disability; (2) in retaliation for requesting a reasonable accommodation (i.e. to work remotely); and/or (3) to avoid having to accommodate Plaintiff any longer under the NJ LAD.

50.     These actions as aforesaid constitute violations of the NJ LAD.

### Count III
### Violations of the Age Discrimination in Employment Act "ADEA"
**(Age Discrimination)**

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.     Plaintiff properly exhausted his administrative remedies by filing with the Equal Employment Opportunity Commission and initiating this lawsuit within 90 days of receipt of a right-to-sue letter and/or notice of dismissal.

53.     Based on the foregoing, Plaintiff believes and therefore avers that he was terminated due to his advanced age.

54.     These actions as aforesaid constitute violations of the ADEA.

### Count IV
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
**(Age Discrimination)**

55.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56.     Based on the foregoing, Plaintiff believes and therefore avers that he was terminated due to his advanced age.

57.     These actions as aforesaid constitute violations of the NJ LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B.      Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: September 2, 2021